FILED

2006 SEP 12  AM 8: 42

CLERK US DISTRICT COURT
SOUTHERN-DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K. JAMEL WALKER and DALE R. HURD,<br><br>Plaintiffs,<br><br>vs.<br><br><br>JEANNE S. WOODFORD, Director;<br>STUART RYAN, Warden (A), DOES 1-10,<br><br>Defendants. | CASE NO. 05cv1705-LAB (NLS)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED, DENYING MOTION FOR PRELIMINARY INJUNCTION, GRANTING IN PART AND DENYING IN PART REQUESTS FOR JUDICIAL NOTICE, STRIKING CERTAIN EXHIBITS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE** |

Plaintiffs K. Jamel Walker and Dale Hurd, inmates at Calipatria State Prison ("Calipatria"), filed a complaint in this case on August 30, 2005, seeking relief under 42 U.S.C. § 1983 for alleged violations of their Eighth Amendment rights. Plaintiffs complain that lights in their cells, which they are not permitted to cover, are turned on 24 hours a day. Plaintiffs allege that the light prevents them from sleeping adequately, and that this has caused a variety of sleep-related problems.

On October 4, 2005, Plaintiffs filed a motion seeking a preliminary injunction. Plaintiffs ask that Defendants be enjoined from subjecting them and all of their fellow inmates to light 24 hours a day, and from disciplining Plaintiffs and all of their fellow inmates for covering the lights in their cells.

1 | On January 20, 2006, after an extension of time by Magistrate Judge Nita Stormes, Defendants filed

2 | their opposition to this motion.  On February 9, Defendants filed a supplemental memorandum of

3 | points and authorities opposing the motion.  On February 14, Plaintiffs replied to Defendants'

4 | opposition.

5 | On January 20, 2006, Defendants filed motions to dismiss and to strike, pursuant to Fed. R.

6 | Civ. P. 12(b), (b)(6), and (f); as well as a request for judicial notice accompanied by a declaration by

7 | G. Michael German.  On February 9, Plaintiffs filed a request for judicial notice, along with a

8 | declaration from each of them.  Plaintiffs filed another request for judicial notice on February 14,

9 | accompanied by a declaration by Plaintiff Walker.  On February 15, Defendants filed a declaration by

10 | Defendant Ryan.

11 | On February 17, Judge Stormes took the motion under submission, and on March 1, issued a

12 | report and recommendation ("R&R") recommending that (1) the parties' requests for judicial notice

13 | each be granted in part and denied in part; (2) Plaintiff Hurd's claims be dismissed without prejudice

14 | for failure to exhaust; (3) the Fourteenth Amendment claim be dismissed with leave to amend; (4) the

15 | claims against Defendant Woodford be dismissed with leave to amend; (5) the request for attorney's

16 | fees be stricken; (6) Defendants' motion to dismissed be denied in all other respects; (7) the motion

17 | for preliminary injunction be denied; and (8) various exhibits be stricken.  Defendants did not object

18 | to the R&R.  On May 5, 2006, Plaintiffs filed their objections to the R&R, to which Defendants did

19 | not reply.

20 | **I.     LEGAL STANDARD**

21 | A district court has jurisdiction to review the report and recommendation on dispositive pretrial

22 | motions. Fed. R. Civ. P. 72(b).  "The district judge to whom the case is assigned shall make a de novo

23 | determination upon the record, or after additional evidence, of any portion of the magistrate judge's

24 | disposition to which specific written objection has been made in accordance with this rule." *Id.*; *see*

25 | *also* 28 U.S.C. § 636(b)(1)(C).  "A judge of the court may accept, reject, or modify, in whole or in part,

26 | the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Thus, this

27 | Court reviews those parts of the report and recommendation to which a party has filed specific written

28 | objections.

1    Allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less

2   stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

3   (1972).  Thus, where a plaintiff appears *in pro per* in a civil rights case, the court must construe the

4   pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi*, 839 F.2d at 623.

5   Although the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules

6   of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

7    The Court, although construing Plaintiffs' complaint liberally, will not assume that Defendants

8   have violated their rights in ways that have not been alleged. *See Associated Gen. Contractors of Cal.,*

9   *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

10    The standard used to evaluate a motion to dismiss is a liberal one, particularly when
       the action has been filed pro se.  However, a liberal interpretation of a civil rights
11    complaint may not supply essential elements of the claim that were not initially pled.
       Vague and conclusory allegations of official participation in civil rights violations
12    are not sufficient to withstand a motion to dismiss.

13   *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

14    To state a claim under § 1983, Plaintiff "must allege the violation of a right secured by the

15   Constitution and laws of the United States, and must show that the alleged deprivation was committed

16   by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v.*

17   *Taylor*, 451 U.S. 527, 535 (1981)).

18   **II.    PLAINTIFFS' OBJECTIONS TO R&R**

19    Plaintiffs raise eight specific objections.  They object that:

20    1. Judge Stormes erred in considering Defendant Ryan's declaration, which they contend was

21   untimely, in opposition to the motion for preliminary injunction;[1]

22    2.  This declaration contained false statements and should have been discounted;

23    3.  Judge Stormes erred in refusing to consider or take judicial notice of their exhibits

24   submitted in support of their motion for preliminary injunction;

25    4. They are entitled to preliminary injunctive relief because they have properly alleged "grave

26   sleep problems";

27   

28    [1] The R&R explains that, although Defendant Ryan's declaration was submitted both in
      opposition to Plaintiffs' motion for preliminary injunction and in support of Defendants' motion to
      dismiss and to strike, it was considered for the former purpose only.  (R&R at 16, n.7.)

- 3 -                                           05cv1705

1    5. Under Ninth Circuit precedent, subjecting prisoners to constant illumination is *per se*

2   unconstitutional;

3    6. Plaintiff Hurd has exhausted his administrative remedies and therefore may properly pursue

4   his claims;

5    7. Defendant Woodford is a proper defendant; and

6    8. Plaintiffs' equal protection claim is properly pleaded.

7   (Pls.' Obj. to R&R at 1–2.)

8    The first four objections pertain solely to Plaintiffs' motion for preliminary injunction.

9   Although Plaintiffs requested in their opposition that four of Defendants' exhibits be struck, they do

10   not object to the R&R's disposition of this request. They also do not object to most of the factual

11   findings, to the R&R's recommendation that Defendants' request for judicial notice be granted in part,

12   to the R&R's recommendation that their request for attorneys' fees be stricken, or to a number of other

13   portions of the R&R. The Court has reviewed the R&R in its entirety and is satisfied that those

14   portions not objected to are correctly analyzed and the correct disposition is recommended. Therefore,

15   the Court will review in this order only those portions of the R&R to which Plaintiffs have specifically

16   objected. The remainder, including most of the factual report, is hereby adopted.

17   **III.   FACTUAL BACKGROUND**

18    Except where noted, the following factual background is taken from those portions of the R&R

19   to which no objection was received, and which the Court has therefore adopted.

20    In this civil rights case, Plaintiffs Walker and Hurd, housed at California's Calipatria State

21   Prison, bring this action to challenge the conditions of their confinement. Each of Plaintiffs' cells is

22   lit by two 34-watt fluorescent lights which can be turned on or off by inmates. Each cell is also lit 24

23   hours a day by a 7-watt fluorescent bulb that is alleged to be equivalent a 40–60 watt incandescent

24   bulb. Plaintiffs challenge the 24-hour lighting.

25    Between 1994 and 2004, Calipatria staff allowed inmates to cover cell light fixtures at night.

26   Beginning December 20, 2004, however, Defendant Ryan issued a memorandum prohibiting this

27   practice, and warning inmates that they would be subject to disciplinary action if violated this rule.

28   Plaintiffs allege that as a result of this new policy, they have been deprived of adequate sleep and have

1  suffered various physical, emotional, and mental symptoms such as headaches; eye strain; fatigue;

2  irritability; and difficulty concentrating and sleeping.  They allege that prisoners housed in other state

3  facilities, as well as inmates in Calipatria's administrative segregation unit are not subjected to 24-hour

4  illumination.

5         Plaintiffs pursue claims pursuant to 42 U.S.C. § 1983, arguing that the conditions of their

6  confinement violate their Eighth Amendment rights and that the unequal application of the lighting

7  rules violates their Fourteenth Amendment equal protection rights.  In addition to moving for a

8  preliminary injunction, Plaintiffs seek declaratory and permanent injunctive relief, compensatory and

9  punitive damages, and attorneys' fees and costs.

10        On May 4, 2006, Plaintiff Walker filed a notice of change of address.  He is no longer at

11 Calipatria, but is now being housed at a facility located in Ione, California.[2]  Neither Plaintiff has

12 attempted to show a reasonable expectation that Plaintiff Walker may return to Calipatria.

13 **IV.    DISCUSSION**

14        **A. Mootness of Motion for Injunctive Relief**

15        As discussed below, Plaintiff Hurd's claims are being dismissed without prejudice for failure

16 to exhaust administrative remedies.  Because Plaintiff Walker has been transferred and neither Plaintiff

17 has attempted to show that there is a reasonable expectation or demonstrated probability of his

18 returning to Calipatria, his request for injunctive relief is moot. *Johnson v. Moore*, 948 F.2d 517, 519

19 (9th Cir. 1991). (citing *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986)).  For these reasons,

20 rather than the reasons set forth in the R&R, the motion for preliminary injunction is **DENIED**.

21        The objections pertaining to this motion (that Judge Stormes erred in considering Defendant

22 Ryan's declaration, which they contend was untimely; that this declaration contained false statements

23 and should have been discounted; that Judge Stormes erred in refusing to consider or take judicial

24 notice of their exhibits submitted in support of their motion for preliminary injunction; and that

25 Plaintiffs are entitled to preliminary injunctive relief because they have properly alleged "grave sleep

26

27      [2] Plaintiff Walker's notice merely gives his new address and does not name the facility.
Apparently it is the Mule Creek State Prison, which is the only adult facility listed on the California
Department of Corrections and Rehabilitation's website as being located at Ione. *See* Map of Adult

28 Facilities, *available at* http://www.cdcr.ca.gov/Visitors/docs/facility_map.pdf. In any case, it is clear
he is no longer housed at Calipatria.

1    problems") are thus also moot and will not be considered at this time. *Forest Guardians v. Johanns*,

2    450 F.3d 455, 461 (9th Cir. 2006) (holding that federal courts lack jurisdiction to consider moot

3    questions or to declare principles or rules of law which cannot affect the matter in issue in the case

4    before them).

5    **B. Objection: Subjecting Prisoners to 24-Hour Illumination Is *Per Se* Unconstitutional**

6    Plaintiffs note that the R&R says that "constant illumination can violate an inmate's Eighth

7    Amendment rights." (Memo in Support of Obj. to R&R at 11 (citing R&R at 10)). They argue that

8    this is legal error, and contend that Ninth Circuit precedent "establishes that subjecting prisoners to

9    constant illumination *is* unconstitutional, not 'may be' unconstitutional." (Memo in Support of Obj.

10   to R&R at 10 (capitals omitted).) This is their sole objection on this point. They conclude, "Thus,

11   Judge Stormes' use of the qualifying phrase 'can violate an inmate's Eighth Amendment rights' when

12   discussing Ninth Circuit precedent on this point, is not a fair reading . . . ." (Memo in Support of Obj.

13   to R&R at 13.)

14   Plaintiffs cite *Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996), which opines that

15   "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and

16   psychological harm by living in constant illumination. This practice is unconstitutional." (quoting

17   *LeMaire v. Maass,* 745 F.Supp. 623, 636 (D.Or. 1990), *vacated on other grounds*, 12 F.3d 1444,

18   1458–59 (9th Cir. 1993)). It is on these two cases that Plaintiffs rest their argument.

19   Plaintiffs have misconstrued the holdings of both *Keenan* and *LeMaire* as being broader

20   than they in fact are. *Keenan*, as Plaintiffs note, dealt with a situation in which an inmate alleged

21   that large florescent lights directly in front of and behind his cell shone into his cell 24 hours a day,

22   so that his cell was "constantly illuminated, and [he] had no way of telling night or day . . . ." 83

23   F.3d at 1091. Plaintiffs argue that "if lighting located outside an inmate's cell is enough to cause

24   him harm when shining into the cell, a fortiori, a light source located inside an inmate's cell is

25   enough to cause him harm under Ninth Circuit law." (Memo in Support of Obj. to R&R at 12.)

26   They also argue that because the lights in *Keenan* were outside the cell, the lights at issue here,

27   which are located inside the cells, are necessarily brighter. (*Id.*) This reasoning is spurious. The

28   focus in *Keenan* was on the brightness of the light and the fact that it shone in from two directions

- 6 -

1    so that there was no escape from it. The fact that a bulb is located inside a cell rather than outside

2    is not necessarily determinative of whether lighting conditions result in a Constitutional violation.

3    Because the factual situation is somewhat different in this case, the Constitutional analysis of this

4    factual situation is necessarily different as well. *See Wills v. Terhune*, 404 F. Supp.2d 1226, 1231

5    (E.D.Cal. 2005) (distinguishing *Keenan* on the basis of the intensity of the light and its effects on

6    the prisoner).

7            In both *Keenan* and *LeMaire*, lighting conditions potentially violated Constitutional

8    requirements because the light was allegedly causing psychological and/or physiological harm, and

9    not merely because it was turned on. Plaintiffs are, in effect, asking the Court to read the *Keenan*

10   holding as if it said "there is no legitimate penological justification for requiring inmates to live in

11   constant illumination," without reference to "physical and psychological harm." As far as the

12   Court is aware, neither the Ninth Circuit nor any other federal court has held that prisoners have a

13   right to sleep in complete darkness, as Plaintiffs request. *See* Compl. at 7 (requesting a judicial

14   determination that the policy of denying Plaintiffs "the ability to turn off their cell lights and sleep

15   in total darkness, is unconstitutional). Rather, as the R&R notes, other courts have held that

16   continuous low-wattage lighting is permissible in jails or prisons. *See, e.g., O'Donnell v. Thomas*,

17   826 F.2d 788, 790 (8th Cir. 1987) (noting holding that continuous lighting in a holding cell was not

18   unreasonable given the need for jail security and the need to monitor the prisoner); *King v. Frank*,

19   371 F. Supp.2d 977, 984–85 (W.D. Wis. 2005) (holding that constant illumination of cell by 9-watt

20   fluorescent light was Constitutionally permissible); *Willis*, 404 F. Supp.2d at 1230–31 (E.D.Cal.

21   2005) (holding that 24-hour illumination by 13-watt bulb was not objectively unconstitutional).

22           Furthermore, even if 24-hour lighting infringed on a prisoner's Constitutional rights, it may

23   nevertheless be valid if it is reasonably related to legitimate penological interests, as Defendants

24   argue is the case here. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Continuous low-wattage lighting

25   may therefore be permissible where it is based on legitimate prison security concerns. *See King*,

26   371 F. Supp.2d at 984–85.

27           While Defendants' motion to dismiss Plaintiffs' Eighth Amendment claim is being denied

28   by this order, this particular objection is **OVERRULED**.

## C. Objection: Plaintiff Hurd Has Exhausted His Administrative Remedies

Plaintiffs object that Plaintiff Hurd pursued administrative remedies in a similar situation in 1998 and that this satisfies the exhaustion requirement. They argue that the policy regarding covering lights has fluctuated since 1994 but that Defendant Ryan is the only warden who did not relent when asked to permit inmates to cover their lights. (Memo in Support of Obj. to R&R at 14.) They characterize the policy as a "reprise" of previous policies. (*Id.*) Plaintiffs are aware that there is no "futility" exception to the exhaustion requirement, and emphasize that they are *not* arguing that it would be futile to re-argue this claim. *See Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001). Rather, they argue that prison regulations prevent Hurd from refiling a previously denied appeal. (*Id.* at 15 (citing California Code of Regulations, Title 15, §§ 3084.3(c)(2) and 3084.2(g)(1)–(3)). Plaintiffs urge the Court to find that "there were no remedies available to Hurd for him to exhaust in 2004 when Ryan decided to enforce a policy that had been previously unenforced." (*Id.* at 15.)

In short, Plaintiffs are arguing that prison regulations prevent Hurd from pursuing administrative remedies because it is the same issue. Defendants, however, have represented to the Court that Defendant Ryan's policy adopted in December, 2004, was new. The Court notes that Plaintiffs have, from the start, represented that the policy they are challenging was a new one, and that it was instituted by Defendant Ryan. *See, e.g.*, Compl. at 6 ("On December 20, 2004, defendant Ryan issue[d] a memorandum prohibiting . . . inmates . . . from covering their light fixtures;" "Since December 21, 2004, [Calipatria] staff have been vigorously enforcing Ryan['s] policy prohibiting the covering of the cell light fixtures, under threat of disciplinary action . . . .") Plaintiffs are therefore, in essence, predicting that administrators will interpret Ryan's policy as a reiteration of the previous policy rather than as a new policy, while Defendants have indicated that it is a new policy.

Because the policy at issue was implemented by Defendants and they are charged with administering it, the Court defers to their interpretation of it. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that an official's interpretation of his own regulations is controlling unless "plainly erroneous or inconsistent with the regulation.") Plaintiffs' objection is therefore **OVERRULED.**

05cv1705

**D.  Objection:  Defendant Woodford is a Proper Defendant**

The R&R recommended that Defendant Woodford be dismissed because Plaintiffs had not alleged facts that would connect her with any Constitutional violation.  Plaintiffs' objection consists primarily of argument that Defendant Woodford is chargeable with the knowledge of her subordinates and agents.  (Memo in Support of Obj. to R&R at 16–18.)

Defendant Woodford cannot be liable under § 1983 under agency or *respondeat* theories, where she neither knew of or participated in any Constitutional violations.  "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no *respondeat superior* liability under section 1983." *Jones v. Williams*,  297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

Plaintiffs also suggest that because Defendant Woodford should have about the lighting regulation and about the arrangement of lights at Calipatria, she therefore participated in violations of their Constitutional rights.  Plaintiffs cite the California Code of Regulations, title 15, § 3380(c), arguing that this regulation required Defendant Woodford to specifically approve Defendant Ryan's policy.  This interpretation is equivocal at best, and as the R&R points out, Plaintiffs' own pleadings suggest that Defendant Woodford did not make or personally approve the policy.  (R&R at 13–14.)  But even if the Court accepted this interpretation, approval of the policy, in itself, would not give rise to § 1983 liability.

As discussed previously, the lighting arrangement at issue here is not *per se* unconstitutional.  Therefore, even assuming that Defendant Woodford knew how the lighting was configured at Calipatria, and even if she knew of Ryan's policy forbidding covering lights, she would not necessarily know that Plaintiffs' Constitutional rights were being violated.  Even if she had reason to know, or at least to suspect that perhaps inmates' rights were being violated, Plaintiffs have not adequately alleged that she in fact did know.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

1  could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

2  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Under this standard, "an official's failure to

3  alleviate a significant risk that he should have perceived but did not" cannot serve as a basis for

4  § 1983 liability.  *Id.*  Plaintiffs' allegations are insufficient in this respect.

5      As discussed earlier, 24-hour lighting is not unconstitutional *per se*, particularly where it is

6  not accompanied by physical or psychological harm.  Contrary to the statement in Plaintiffs'

7  objections, the Court has reviewed the Complaint and finds no allegations that Defendant

8  Woodford knew any inmates were suffering physical or psychological harm.

9      Although they did not do so in their complaint, Plaintiffs now attempt to allege that

10  "Woodford was made aware of the adverse effects of the lighting policy, not only by plaintiff but

11  by numerous other inmates at [Calipatria]."  (Memo in Support of Obj. to R&R at 16–17.)

12  However, in support of this allegation, they argue that because Woodford is head of the

13  Department of Corrections and Rehabilitation, she is responsible for Constitutional violations.  (*Id.*

14  at 17, n.4.)  This is merely a reiteration of the *respondeat superior* argument.

15      In their opposition to Defendants' motion to dismiss and to strike, Plaintiffs suggest that

16  grievances about the lighting reached Woodford's office.  (Memo in Support of Opp'n to Mot. to

17  Dismiss, at 20.)  However, the records of which Judge Stormes took judicial notice[3] show that the

18  grievances regarding the lighting were not decided by Defendant Woodford herself, but by her

19  designee, as permitted under state law.  *See* R&R at 14 (citing records).  Plaintiffs accept this as

20  true, but argue that this "does not shield Woodford from liability."  (Memo in Support of Obj. to

21  R&R at 17.)  In this context, Plaintiffs argue that Defendant Woodford is liable for the acts of her

22  designee, whether or not she had actual knowledge.  As previously discussed, however, this is not a

23  correct reading of § 1983.

24  / / /

25  _____

26  [3] "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence
outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary
judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v. Ritchie*, 342 F.3d

27  903, 907–08 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)).  A court may, however, consider certain
materials, including documents attached to the complaint, documents incorporated by reference in the

28  complaint, or — as in this case — matters of judicial notice, without converting the motion to dismiss
into a motion for summary judgment. *Id.*

1    Because Plaintiffs have not alleged facts showing that Defendant Woodford participated in

2  violations of Plaintiffs' Constitutional rights, this objection is **OVERRULED** and Plaintiffs'

3  claims against her will be **DISMISSED** without prejudice.

4    **E.  Objection:  Plaintiffs' Equal Protection Claim Is Properly Pleaded.**

5    Plaintiffs proceed under two alternate theories: (1) they have sufficiently alleged

6  discriminatory intent; or (2) in the alternative, a liberal construction of their pleadings reveals an

7  equal protection claim.

8    Plaintiffs' first objection represents their sole objection to the R&R's reasoning.  An equal

9  protection claim under § 1983 includes must rely on allegations that Defendants acted with a

10  discriminatory intent or purpose to discriminate against Plaintiffs. *Lee v. City of Los Angeles,* 250

11  F.3d 668, 686–87 (9th Cir. 2001) (citing *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998),

12  *cert. denied,* 525 U.S. 1154 (1999)).  Plaintiffs' objection as to their first theory is cursory.  The

13  Court has reviewed the pleadings, and finds that Plaintiffs have not alleged discriminatory intent

14  on the part of Defendants Ryan or Woodford at all.  At most, Plaintiffs have alleged that Ryan

15  and/or Woodford knew the lighting policy would affect prisoners differently depending on which

16  cells they were housed in.  As Plaintiffs' pleadings have made clear, prisoners can be — and

17  frequently are — transferred and do not necessarily remain in the same cell or at the same facility.

18  It is prisoners themselves, and not the cells in which they are housed, who possess equal protection

19  rights.  While it is clear that Defendant Ryan's policy was directed at a particular group of cells,

20  there is no allegation that prisoners themselves were the objects of discriminatory intent.  Because

21  Plaintiffs have not alleged discriminatory intent against them, the Court will not supply this

22  missing element. *Ivey,* 673 F.2d at 268.

23    Plaintiffs' second objection is essentially that the R&R should have construed their

24  complaint more liberally, so as to incorporate additional theories of recovery within the general

25  category of equal protection.  In support of their second theory, Plaintiffs provide a completely new

26  but thorough and clear argument of their Fourteenth Amendment equal protection claim.  Plaintiffs

27  cite authority for the proposition that the right to be free from cruel and unusual punishments is a

28  / / /

- 11 -                                   05cv1705

1   fundamental right, and argue that this triggers some form of equal protection review, whether strict

2   scrutiny or rational basis review.

3       "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

4   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

5   direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v.*

6   *Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216

7   (1982)).

8       Plaintiffs' second argument fails because they do not allege that they have been treated

9   differently from similarly situated persons.

10      The first step in equal protection analysis is to identify the defendants' asserted
        classification of groups.  The groups must be comprised of similarly situated
11      persons so that the factor motivating the alleged discrimination can be identified.
        An equal protection claim will not lie by conflating all persons not injured into a
12      preferred class receiving better treatment" than the plaintiff.

13  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005) (citations, alterations, and

14  internal quotation marks omitted).

15      Accepting Plaintiffs' pleadings as true, three large groups of inmates are identified: those

16  housed in general population cells at Calipatria, who are subject to 24-hour lighting under

17  Defendant Ryan's policy; those housed in the administrative segregation portion of Calipatria, who

18  are not subject to 24-hour lighting; and those who are housed at other institutions, who are not

19  subject to 24-hour lighting.

20      Plaintiffs have left it an open question which prisoners they consider to be "similarly

21  situated."  However, regardless of which group of prisoners is chosen for comparison, Plaintiffs

22  have not stated a claim.  As Plaintiffs point out, the lighting conditions are the product of both the

23  physical structures in which prisoners are housed and the policies in place at that portion of the

24  institution in which the prisoners are housed.  *See* Memo in Support of Obj. to R&R at 4, 6–7

25  (asserting that no other institution housing level IV inmates has 24-hour security lights and that

26  Calipatria's administrative segregation unit was constructed without 24-hour cell security lights).

27      A successful equal protection claim may be brought by a "class of one," when the plaintiff

28  alleges that it has been intentionally treated differently from others similarly situated and that there

- 12 -

1   is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562,

2   564 (2000).  However, Plaintiffs have not alleged that they in particular are being intentionally

3   treated differently from any others.  Plaintiffs have specifically rejected the possible theory that

4   they are being treated differently than similarly situated prisoners in Calipatria's general

5   population.  Rather, their pleadings suggest they are attempting to bring their claims on behalf of

6   the entire general population.[4]  In any event, Plaintiffs do not state a claim with respect to other

7   prisoners in Calipatria's general population because they are subject to the exact same conditions

8   and policy.  The mere fact that Defendants' facially neutral policies had a foreseeable impact on an

9   identifiable group does not establish an equal protection violation.  *Lee*, 250 F.3d 15 687.

10          Prisoners in Calipatria's administrative segregation unit, or in other institutions, are not

11   similarly situated.  As Plaintiffs point out, the administrative segregation unit was constructed

12   later, with lighting that prisoners can turn off, and is physically separate.  (Compl. at 5–6; Memo in

13   Support of Obj. to R&R at 6.)  Furthermore, as Plaintiffs point out, prisoners in administrative

14   segregation are classified differently from prisoners in Calipatria's general population for security

15   and/or disciplinary purposes, and are therefore housed separately and subject to separate

16   restrictions in other respects.  (Memo in Support of Obj. to R&R at 6–7.)

17          Prisoners housed in other institutions are likewise not similarly situated.  Aside from the

18   obvious fact that those prisoners are housed in completely different physical facilities under the

19   supervision of different wardens, Plaintiffs' opposition also cites legal authority, and provides

20   argument, that the policies of each prison are set individually by the warden of each institution.

21   (Memo in Support of Obj. to R&R at 17.)  Prisoners in other institutions are therefore not subject

22   to any of Defendant Ryan's policies, but rather are subject to the various policies and restrictions

23   put in place by the wardens at their respective institutions.

24   / / /

25

26          [4] The Court rejects the contention that Plaintiffs are representing other prisoners.  Plaintiffs
have not complied with the requirements of Fed. R. Civ. P. 23 for class actions, and lack standing to
27   raise the claims of other prisoners who are not parties to this action.  Moreover, Plaintiffs do not allege
that any other prisoners in Calipatria's general population are similarly aggrieved or have suffered
28   Constitutionally cognizable harms, or that any other such prisoners have exhausted their administrative
remedies.

- 13 -                                                          05cv1705

1    In other words, the other groups of prisoners that Plaintiffs suggest are "similarly situated"

2    are in fact dissimilarly situated in a number of significant respects.  Because the prisoners housed

3    in Calipatria's administrative segregation unit or in other institutions are not similarly situated,

4    Plaintiffs do not state a claim with respect to them

5    Plaintiffs attempt to pick holes in the logic of applying the policy to one physical segment

6    of one institution, and point out that prisoners housed in cells not subject to the lighting policy at

7    issue here may in fact present greater security risk.  However, prison officials are entitled to

8    "wide-ranging deference in the adoption and execution of policies necessary to preserve internal

9    order and maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).  The

10   Court therefore accords Defendants Ryan and Woodford such deference and will not second-guess

11   the wisdom of this decision.  The fact that the prisoners are dissimilarly situated is enough to

12   defeat an equal protection claim.

13   The R&R recommends dismissing this claim without prejudice.  Therefore, this objection

14   is **OVERRULED**.  Plaintiffs' equal protection claim will be dismissed without prejudice.

15   **V.  CONCLUSION AND ORDER**

16   For these reasons, Plaintiffs' objections to the R&R are **OVERRULED**.  The Court

17   therefore **ADOPTS** the R&R as modified herein.

18   Plaintiff Hurd's claims are hereby **DISMISSED** without prejudice for failure to exhaust.

19   Plaintiffs' motion for preliminary injunction is **DENIED** as moot.  Defendants' motion to dismiss

20   the Eighth Amendment claim is **DENIED**.  Plaintiffs' Fourteenth Amendment equal protection

21   claim is **DISMISSED** with leave to amend.  All claims against Defendant Woodford are

22   **DISMISSED** with leave to amend.  Plaintiffs' request for attorney's fees is **STRICKEN**.

23   Defendants' motion to dismiss and to strike is **DENIED** in all other respects.

24   The following requests for judicial notice are **GRANTED**: Defendants' request with regard

25   to Exs. C and D to the declaration of G. Michael German; and Plaintiffs' request with regard to Ex.

26   B to the Declaration of Plaintiff Hurd in Support of Opposition to Motion to Dismiss.  The parties'

27   requests for judicial notice in support of or in opposition to the motion for preliminary injunction

28   are **DENIED** as moot. All other requests for judicial notice are **DENIED**.

05cv1705

The R&R recommended striking certain exhibits, and neither party has objected. Therefore, the exhibits, other than Exs. C and D, attached to the Declaration of G. Michael German; the exhibits, other than Ex. B, attached to Declaration of Plaintiff Hurd in Support of Opposition to Motion to Dismiss; and all exhibits attached to the Declaration of Plaintiff Walker in Support of Opposition of Motion to Dismiss are hereby **STRICKEN**.

Plaintiff Walker is granted leave to amend his complaint to remedy the defects identified in it. If he wishes to do so, he must file and serve his amended complaint within **30 calendar days of the file stamp date on this order**.

**IT IS SO ORDERED.**

DATED:  _9-8-06_

_Larry A. Burns_

**HONORABLE LARRY ALAN BURNS**
United States District Judge

cc:      Magistrate Judge Nita L. Stormes
         Plaintiffs, _Pro Se_
         All Counsel of Record