UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K. JAMEL WALKER and DALE R. HURD,<br><br>                              Plaintiffs,<br>vs.<br><br>JEANNE S. WOODFORD, Director;<br>STUART RYAN, Warden (A), DOES 1-10,<br><br>                              Defendants. | CASE NO. 05cv1705-LAB (NLS)<br><br>**ORDER ADOPTING SECOND REPORT AND RECOMMENDATION**<br><br>[Dkt. no. 59] |

Plaintiff K. Jamel Walker, previously an inmate at Calipatria State Prison ("Calipatria"), is proceeding *pro se*. Plaintiff is currently incarcerated at Mule Creek State Prison, where the lighting problems he complains of at Calipatria concededly do not exist. (First Amended Complaint ("FAC") at 9:7–9.)

On September 12, 2006, the Court adopted Magistrate Judge Stormes' report and recommendation, dismissing Plaintiffs' claims but granting Plaintiff Walker leave to file an amended complaint. On October 19, 2006, Plaintiff Walker filed the FAC, adding Defendants and claims. Defendants Woodford and Ryan filed a motion to dismiss the FAC, in which the other Defendants joined. On May 3, 2007, Magistrate Judge Stormes issued her second report and recommendation (the "R&R"), recommending as follows:

    1. The motion to dismiss Plaintiff's Eighth Amendment claim be denied as to Defendants Ryan, Bourland, Scribner, Ochoa, and Grannis, but granted as to all other Defendants with leave to amend;

2. The motion to dismiss Plaintiff's equal protection claim be granted as to all Defendants with leave to amend;

3. The motion to dismiss Plaintiff's requests for relief under California Constitution Article I, sections 7 and 24 be granted as to all Defendants without leave to amend;

4. The motion to dismiss Plaintiff's requests for relief under California Constitution Article I, section 17 be granted as to all Defendants with leave to amend, and if he amends, Plaintiff must show he complied with the California Tort Claims Act;

5. Defendant's motion to dismiss Plaintiff's supplemental state tort claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress be granted as to all Defendants with leave to amend, and if he amends, Plaintiff must show he complied with the California Tort Claims Act for all these claims;

6. Plaintiff's request for injunctive relief be stricken; and

7. Plaintiff's request for declaratory relief be denied.

Plaintiff filed objections to the R&R; Defendants did not object.

**I.   Legal Standards**

A district court has jurisdiction to review the report and recommendation on dispositive pretrial motions. Fed. R. Civ. P. 72(b). "The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Thus, this Court reviews those parts of the report and recommendation to which a party has filed specific written objections.

Allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears in pro per in a civil rights case, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi*, 839 F.2d at 623. Although the Court must construe the pleadings liberally, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

The Court, although construing Plaintiffs' complaint liberally, will not assume that Defendants have violated their rights in ways that have not been alleged. *See Associated Gen. Contractors of Cal.,*

*Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

> The standard used to evaluate a motion to dismiss is a liberal one, particularly when the action has been filed pro se. However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.

*Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts as true all well pleaded facts in the complaint and construes them in the light most favorable to the nonmoving party — here, the Plaintiff. *ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005).

The R&R cites the standard articulated in *Swierkiewicz v. Sorema*, 534 U.S. 506, 513 (2002), which relies on the holding of *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, after the R&R was issued, the Supreme Court abrogated this holding of *Conley*, and by implication, the same standard as articulated in *Swierkiewicz*. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968–69 (2007). The Court therefore does not rely on the old *Conley* standard. Nevertheless, having conducted its *de novo* review of those portions of the R&R objected to, and having also reviewed the remaining portions, the Court concludes the application of new standard does not affect the validity of the R&R's recommendations or the outcome of any of the Court's rulings.

**II.     Discussion**

    **A.     Eighth Amendment Claims**

Plaintiff objects to the R&R's recommendation that his Eighth Amendment claim for deliberate indifference to serious medical needs be dismissed against Defendants Levin, Middleton, and Magner (the "Medical Defendants"). He does not object as to Defendants Dovey, Tilton, and Woodford. Plaintiff acknowledges that the Medical Defendants treated him with medication, but disagrees with their decision to do so. Plaintiff reasons that the medication "would only address the symptoms and not the cause," (Obj. at 2:8–12, 3:17–18) and says the Tylenol they offered "exacerbat[ed] a preexisting medical condition" although he does not say what that condition was or why prescribing Tylenol and exacerbating the unspecified condition constituted deliberate indifference to a serious

medical need. (*Id.* at 3:13–15.) Furthermore, Plaintiff says he declined the Tylenol. (*Id.* at 2:8–12.)

Plaintiff says the Medical Defendants could have written medical chronos permitting him to cover his light, but did not do so because the warden would not allow it. (*Id.* at 2:20–24.) He says this "is sufficient to demonstrate that the warden and his staff were preventing the treatment . . . ." (*Id.* at 2:22–24.) Plaintiff's allegations make clear that, to give him the treatment he sought, the Medical Defendants would have to defy the warden and write the chrono in hopes that other staff would also defy the warden's orders and honor it. It is doubtful that failure to provide treatment that was unavailable because of administrative restrictions even constituted negligence on the Medical Defendants' part, much less deliberate indifference. The Medical Defendants' decision to treat Plaintiff's symptoms rather than write a medical chrono permitting him to cover his light therefore, as a matter of law, cannot constitute "deliberate indifference." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (difference of opinion between prisoner-plaintiff and physician does not amount to deliberate indifference). *See also Bailey v. Gardebring*, 940 F.2d 1150, 1155 (8th Cir. 1991) (noting that "deliberate indifference" presupposes the availability of treatment).

**B.    Equal Protection Claims**

Plaintiff objects that he "has alleged his dissimilar treatment from all other maximum security general population inmates." (Opp'n at 4:1–2.) This is inconsistent with his other pleadings, where he says all maximum security general population inmates in the facility at issue cannot turn off their lights. In support of his opposition, Plaintiff cites the FAC, in which he argues he "is similarly situated with all other inmates housed in general population cells at every other maximum security prison." (FAC at 15:4–5.)

Plaintiff's statements that he is similarly situated with other inmates are not factual allegations, but contentions of law. The Court therefore construes these as legal contentions, rather than as factual allegations, and does not assume the truth of such conclusions. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (explaining that courts do "not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). The Court has previously dealt with the objections Plaintiff now raises in his objections. (See Order of September 12, 2006, at 11:5–14:12.) The FAC suffers from essentially the same faults.

1    Plaintiff comments on what he says are the R&R's misinterpretation of authority and misunderstanding of his FAC, and cites authority not binding on this court. In light of the relevant and binding equal protection analysis set forth in *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Plaintiff's citations to non-binding authority is unavailing.

Finally, Plaintiff objects he has alleged facts showing Defendants acted with discriminatory intent. In support of his contention, Plaintiff cites ¶¶ 24, 31, 33, and 43–46 of the FAC. Discriminatory purpose implies more than intent as volition or intent as awareness of consequences; rather, it implies that the decisionmaker selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). The Court has reviewed the cited paragraphs and has found that they allege nothing more than that Defendants knowingly treated maximum security inmates at Calipatria State Prison differently from maximum security inmates in other facilities.

While inmates in the maximum security section of Calipatria can turn their primary lights on and off, the cells also have a 7-watt security light that cannot be turned on and off. (FAC at 8:9–9:14.) The lights in the more recently constructed Administrative Segregation ("Ad Seg") section of Calipatria can, however, be turned off. (*Id.* at 11:15–18.) Plaintiff alleges the 7-watt security lights in the maximum security area at Calipatria were supposed to be able to be turned off, but contractor error resulted in their remaining on constantly. (*Id.* at 8:25–9:3.) Formerly, he alleges, inmates (including Plaintiff) were permitted to cover their lights if they had trouble sleeping (*id.* at 8:15–24), but this unofficial policy was rescinded after an escape attempt by other prisoners. (*Id.* at 10:21–11:1.) Plaintiff alleges generally that unnamed staff in Calipatria's A, B, and C facilities relented and permitted inmates to cover lights, but the staff assigned to facility D, where he was housed, did not relent. (*Id.* at 11:2–9.) Plaintiff also alleges that, among the inmates in Ad Seg (who were permitted to turn off their lights), were the two who had tried to escape. (*Id.* at 11:15–18.) This last allegation undercuts Plaintiff's argument, because it suggests Defendants were motivated by general security concerns, and not by an intent to single out for punishment or retribution the inmates who had displeased them.

///

1    While Plaintiff alleges broadly that Defendants' conduct was sadistic, malicious, intentional, wanton, and oppressive (FAC at 16:13–18), these conclusory allegations are not supported by factual allegations concerning an intent to discriminate. At best, Plaintiff's allegations describe carelessness or poor judgment on Defendants' part. However, his factual allegations regarding motive indicate the reason for the policy relates to the manner in which Calipatria's maximum security facilities were constructed (which, he has alleged, was an accident by contractors), an escape attempt at Calipatria, and the individual unofficial decisions of certain unnamed staff members who are not Defendants. Therefore, Plaintiff fails to allege discriminatory intent.

### C. California Tort Claims Act

Plaintiff objects that he has shown compliance with the California Tort Claims Act (Cal. Gov't Code §§ 900 *et seq.*) ("CTCA"), and believes the R&R errs by raising this issue *sua sponte*. (Obj. at 7:22–8:1.) Plaintiff objects that he has alleged facts showing he has exhausted his administrative remedies. (*Id.* at 8:21–23 (citing FAC, ¶¶ 47, 48.)

Paragraphs 47 and 48 of the FAC read as follows:

> 47. Plaintiff has exhausted all administrative remedies within the CDCR.
> 48. Plaintiff has complied with the provisions of the California Tort Claims Act, by filing a Government Tort Claim on July 3, 2006.

Paragraph 47 is conclusory and, as noted, the Court does not assume it to be true as it would in the case of factual allegations. In the case of paragraph 48, Plaintiff has not attached proof of filing to his FAC. *See Hendon v. Ramsey*, 2007 WL 1120375, slip op. at *6 (S.D.Cal. 2007) (dismissing complaint without prejudice where plaintiff failed to attach to his complaint any proof that a claim was filed). Nor has made any allegations regarding the outcome of this claim. *See* Cal. Gov't. Code § 945.4 (forbidding a plaintiff to bring a state law tort claim against a public entity for monetary damages until a written claim has been submitted to the governing body of the public entity, and has either been acted on or deemed rejected). A tort claim against a state public entity or its employees must be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues *See* Cal. Gov't Code § 911.2. Bearing in mind that July 3, 2006 falls nearly a year after Plaintiff originally filed his complaint in this matter, it appears Plaintiff filed his

///

1  claim too late and will not be able to attach valid proof of exhaustion. Plaintiff has not yet been heard
2  on this point, however, so the Court will not dismiss with prejudice.

3      Although Defendants could have raised failure to comply with the CTCA as an affirmative
4  defense, it is not waived if they do not. Under California law, failure to allege facts either
5  demonstrating or excusing compliance with the CTCA subjects a complaint to dismissal for failure
6  to state a claim. *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1245 (2004). The Prison Litigation
7  Reform Act requires *sua sponte* dismissal of § 1983 prison condition claims whenever it becomes clear
8  an inmate plaintiff fails to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(1).
9  Plaintiff is therefore incorrect in arguing the R&R erroneously pointed out *sua sponte* his apparent
10 failure to comply with the CTCA's requirements.

11     **D.    Standard for California Constitutional Claims**

12     Plaintiff objects to the R&R's reliance on precedent, and suggests that the standard for
13 establishing violations of Art. I, § 17 of the California Constitution is the same as that under the Eighth
14 Amendment to the U.S. Constitution — that is, the "deliberate indifference" standard rather than the
15 "shocks the conscience" standard. These objections are moot because, although Plaintiff principally
16 objects to the R&R's reliance on *Ley v. California*, 114 Cal.App.4th 1297 (2004), the R&R does not
17 in fact rely on *Ley*. These objections are also moot because, even if both standards were the same,
18 Plaintiff has not met either one. Furthermore, the R&R points out Plaintiff has not yet shown damages
19 are available under this provision and, as discussed below, declaratory relief is unavailable.

20     The Court has reviewed the case cited by Plaintiff, *In re Coca*, 85 Cal.App.3d 493, 502 (Cal.
21 App. 4 Dist. 1978). While *Coca* sheds some light on interpretation of the California Constitution and
22 appears to suggest that California courts will rely on the federal standard, the court there did not
23 expressly state what it considered the standard to be for California claims. Furthermore, because *Coca*
24 involved injunctive relief, it sheds no light on whether damages are available under Art. I, § 17 of the
25 California Constitution. The Court notes that other California cases, albeit in the context of the
26 imposition of criminal penalties, use the "shocks the conscience" standard. *See, e.g.*, *People v.*
27 *Sullivan*, 151 Cal.App.4th 524, 568–69 (Cal. App. 1 Dist. 2007).
28 / / /

### E.  Private Right of Action Under Cal. Penal Code §§ 673 and 2652

Plaintiff objects to the R&R's conclusion that no private right of action is available under these criminal statutes, which forbid either the imposition of cruel and unusual punishments or allowing lack of care that would injure or impair a prisoner's health. A violation of these statutes is a misdemeanor. Plaintiff cites *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171 (9th Cir. 1991) and several other cases for the principle that, under California law, violation of a criminal statute generally gives rise to a private right of action for anyone within the statute's protection.

*Jacobellis* and the cases it relies on interpret statutes that are primarily civil in nature. While some criminal statutes can support private rights of action, *Michael R. v. Jeffrey B.* 158 Cal.App.3d 1059, 1067 (1984), it is appears to be rare that they create such rights of action. According to the authority cited by Plaintiff, violation of a criminal statute does not <u>create</u> a civil liability, but merely sheds light on a defendant's existing duty of care. *Id.* ("Although a statute that provides solely for a criminal penalty does not create a civil liability, the significance of the statute in a civil suit for negligence involves its formulation of a standard of conduct that the court then adopts in the determination of such liability.") (citation omitted). In other words, under the holding of *Michael R.*, the two criminal statutes help explain Defendants' legal duties for purposes of other state tort claims, but they do not themselves create their separate statutory rights of action.

Plaintiff cites Cal. Penal Code § 9 as supporting his contention. This section provides:

> The omission to specify or affirm in this Code any liability to damages, penalty, forfeiture, or other remedy imposed by law and allowed to be recovered or enforced in any civil action or proceeding, for any act or omission declared punishable herein, does not affect any right to recover or enforce the same.

Plaintiff apparently reads this section as providing that, even where a section of the Penal Code omits reference to damages or remedies, they are nevertheless available. This provision by its terms, however, merely leaves the status quo in place. The failure of a section of the Penal Code to mention a private right of action neither destroys any existing right of action, nor creates any right of action that would not otherwise exist.

The Court has reviewed California cases relying on either of these two statutes and has been unable to find any citable opinion where a California court held that either of these statutes created a

private right of action for damages. Therefore, it appears these two statutes may be relevant to a determination of Plaintiff's state tort claims, or in an action for injunctive relief, but they do not give rise to their own separate claims for damages.

### F. Declaratory Relief Claim

Plaintiff objects that his claim for declaratory relief remains viable in spite of his transfer to a different facility where he is no longer subject to the lighting conditions he complains of. Ordinarily, an inmate's transfer to a different facility moots any request for equitable relief arising from conditions at facility from which he was transferred, absent a reasonable expectation or demonstrated probability that he will be transferred back. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986).

Plaintiff cites *Lippoldt v. Cole*, for the principle that a "claim for declaratory relief is not moot where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or future behavior." 468 F.3d 1204, 1217 (10th Cir. 2006). In this case, because of the transfer, a grant of declaratory relief would not affect Plaintiff's current rights. While it might affect Defendants' future behavior as a general matter, it would not affect Defendants' future behavior towards Plaintiff. As the Court explained in its order of September 12, 2006 at 13 n.4, Plaintiff is not representing other inmates, nor can he do so. Even if declaratory relief would affect Defendants' behavior towards other inmates, outside the context of a class action Plaintiff lacks standing to seek relief on behalf of those inmates. *See e.g., Cato v. United States*, 70 F.3d 1103, 1109 (9th Cir. 1995).

### III. Conclusion and Order

For these reasons, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the R&R, and makes the following specific rulings:

1. The motion to dismiss Plaintiff's Eighth Amendment claim is **DENIED** as to Defendants Ryan, Bourland, Scribner, Ochoa, and Grannis, but Plaintiff's Eighth Amendment claims against all other Defendants are **DISMISSED WITH LEAVE TO AMEND**;

2. Plaintiff's equal protection claims against all Defendants are **DISMISSED WITH LEAVE TO AMEND**;

3. Plaintiff's requests for relief under California Constitution Article I, sections 7 and 24 are **DISMISSED WITHOUT LEAVE TO AMEND**;

4. Plaintiff's claims against all Defendants for relief under California Constitution Article I, section 17 are **DISMISSED WITH LEAVE TO AMEND**, and if he amends, Plaintiff must show he complied with the California Tort Claims Act;

5. Plaintiff's supplemental state tort claims against all Defendants for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress are **GRANTED WITH LEAVE TO AMEND**, and if he amends, Plaintiff must show he complied with the California Tort Claims Act for all these claims;

6. Plaintiff's request for injunctive relief is **STRICKEN**; and

7. Plaintiff's request for declaratory relief is **DENIED**.

Plaintiff Walker is granted leave to amend his complaint to remedy the defects identified in it. If he wishes to do so, he must file and serve his amended complaint within **30 calendar days of the file stamp date on this order**.

**IT IS SO ORDERED**.

DATED: August 19, 2007

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge